ROBERT E. KOHN, SBN 200373
Email: rkohn@kohnlawgroup.com
KOHN LAW GROUP, INC.
100 Wilshire Blvd., Suite 700
Santa Monica, CA 90401
Phone: (310) 917-1011
Fax: (310) 917-1001

Counsel for Plaintiffs
JUDITH SILVER; DEBORAH SILVER;
KOFI M. LEE; SEKAI K. LEE; MARY LEE;
WALTER E. HENRICKSON; DANIEL
HENRICKSON; DORIT MARCKS; and
ILAN MARCKS

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| JUDITH SILVER; DEBORAH SILVER; KOFI M. LEE; SEKAI K. LEE; MARY LEE; WALTER E. HENRICKSON; DANIEL HENRICKSON; DORIT MARCKS; and ILAN MARCKS,<br><br>Plaintiffs,<br><br>vs.<br><br>BASIL AND ELISE GOULANDRIS FOUNDATION, a Greece non-profit organization of unknown form; THE METROPOLITAN MUSEUM OF ART, a New York corporation; and DOES 1-100, inclusive,<br><br>Defendants. | CASE NO.:<br><br>**COMPLAINT FOR RESTITUTION, INJUNCTIVE RELIEF, DAMAGES, AND PUNITIVE DAMAGES, FOR:**<br><br>1. **RECOVERY OF PERSONAL PROPERTY;**<br>2. **RESTITUTION OF UNJUST ENRICHMENT; AND**<br>3. **CONVERSION;**<br><br>AND<br><br>**DEMAND FOR JURY TRIAL** |

**COMPLAINT**

# JURISDICTION

1. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332, the diversity statute. Plaintiffs are the heirs of Hedwig Stern, a Jew whose valuable van Gogh painting (the "Painting"), was confiscated by the Third Reich when she was forced to flee from Munich, Bavaria in Germany to Berkeley, California in the United States with her husband and their children to escape Nazi persecution. Jurisdiction of this Court arises under § 1332(a)(1)-(3), because:

   a. The Plaintiffs (the "Stern Heirs") are citizens of California, Washington, and Israel (officially, the State of Israel);

   b. The Defendants are citizens of New York and Greece (officially, the Hellenic Republic); and

   c. The Painting is worth more than $75,000.

The Stern Heirs seek to recover the Painting from Defendant the Basil and Elise Goulandris Foundation (the "B&E Foundation"), a Greek non-profit organization. The Stern Heirs also seek restitution of the money that Defendant The Metropolitan Museum of Art ("The Met," which is a New York corporation) derived when the Met secretly sold the Painting in 1972, for the purpose of avoiding restituting the Painting to Hedwig Stern. According to later reports of investigative journalists, The Met purportedly sold the Painting (for more than $75,000, but the actual price remains private), in a secret transaction (or series of transactions) that allowed a Greek shipping tycoon named Basil Goulandris and his wife Elise Goulandris to obtain it, and to hide it for decades. In addition to other relief, or in the alternative, the Stern Heirs also seek damages for conversion of the Painting; the amount of those damages is the value of the Painting, which exceeds $75,000. The Stern Heirs also seek punitive or exemplary damages.

# DIVISIONAL ASSIGNMENT

2. Hedwig Stern and her family immigrated to Berkeley, California, where they arrived on or about January 7, 1937. Venue in this District is proper under 28 U.S.C. § 1391(b)(3).

# PARTIES

3. The Plaintiffs are the surviving heirs of Hedwig Stern, who had lost her German citizenship pursuant to the Nuremburg Laws of September 15, 1935. On or about October 8, 1943, she became a citizen of the United States and of California, where she resided until her death in 1987:

   a. Judith Silver is a citizen of California and resident of Oakland, California;
   b. Deborah Silver is a citizen of California and a resident of Los Angeles, California;
   c. Kofi M. Lee is a citizen of California and a resident of Los Angeles, California;
   d. Sekai K. Lee is a citizen of California and a resident of Los Angeles, California;
   e. Mary Lee is a citizen of California and a resident of Los Angeles, California;
   f. Walter E. Henrickson is a citizen of Washington and a resident of Seattle, Washington;
   g. Daniel Henrickson is a citizen of California and a resident of Los Angeles, California;
   h. Dorit Marcks is a citizen of Israel and a resident of Arad, Israel; and
   i. Ilan Marcks is a citizen of Israel and a resident of Haluza, Israel.

4. Defendant the B&E Foundation is a Greek non-profit organization of unknown form. According to its own website (*https://goulandris.gr/en/privacy-policy*), the B&E Foundation has its registered office located at "6 P. ARAVANTINOU STREET, 106 74 Athens, Greece." The B&E Foundation currently operates a museum in Athens and another, older museum on the island of Andros, Greece.

5. Defendant The Met is a New York corporation. The Met currently operates two museum buildings in New York City.

6. Plaintiffs are unaware of the names and true capacities of the Defendants, whether individual, corporate and/or partnership entities, or otherwise, named herein as DOES 1 through 100, inclusive, and therefore sue them by their fictitious names. Plaintiffs will seek leave to amend this Complaint when their true names and capacities are ascertained. Plaintiffs are informed and believes, and based thereon alleges, that said Defendant DOES 1 through 100, inclusive, are in some manner responsible for the wrongs alleged herein; and that at all times referenced each was the agent and servant of the other Defendants and were acting within the course and scope of said agency and employment; or alternatively, that said Defendant DOES 1-100 (inclusive) have obtained or will have obtained actual or constructive possession of the Painting.

## ADDITIONAL FACTS

7. "[A]rt and cultural property of victims of the Holocaust (Shoah) and other victims of Nazi persecution was confiscated, sequestered and spoliated, by the Nazis, the Fascists and their collaborators through various means including theft, coercion and confiscation, and on grounds of relinquishment as well as forced sales and sales under duress, during the Holocaust era between 1933-45 and as an immediate consequence[.]" *See* 2009 Terezin Declaration on Holocaust Era Assets and Related Issues [available from the U.S. Department of State at

https://www.state.gov/prague-holocaust-era-assets-conference-terezin-declaration/].

8. When Hedwig Stern escaped Germany at the end of December 1936, the Gestapo barred her from exporting the Painting and other artworks. At some time thereafter, her former attorney Kurt Mosbacher was ordered to be appointed as "trustee" (or "*Treuhaender*") for Hedwig Stern and her husband Fritz Stern. The Nazis appointed "trustees" to liquidate Jewish-owned property, by selling it for the benefit of the Nazi Reich. In or about April 1938, Kurt Mosbacher arranged for the Thannhauser Gallery to sell the Painting, together with a painting by Renoir that she also owned, to a German collector named Theodor Werner. (At the time, the Thannhauser Gallery was under the control of Paul Roemer, who had "Aryanized" the gallery from its former owner – the Jew named Justin Thannhauser.) Theodor Werner paid the combined price of 55,000 Reichsmarks for the two works. Kurt Mosbacher then transferred the 55,000 Reichsmarks into a "blocked" account under the names of Fritz and Hedwig Stern. In or about January 1939, the Gestapo officially confiscated all the property of Fritz and Hedwig Stern, including that account.

9. Hedwig Stern never received any compensation for the looted Painting or the 55,000 Reichsmarks. Seventeen years later, in 1955, Theodor Werner eventually restituted another of her looted artworks (a Courbet) by giving it back to Hedwig Stern. He did not give her back the Renoir, nor did he give back the Painting by van Gogh. Instead, on information and belief, the Painting by van Gogh was transported to Paris in or about January 1948. From there, Justin Thannhauser reportedly transported it to New York, where he purported to sell it to Vincent Astor sometime later in 1948. (Vincent Astor was a Harvard College dropout who had inherited a fortune from his father, John Jacob Astor IV, reportedly the richest passenger who died on the *Titanic*.) Justin Thannhauser had known Hedwig Stern personally, and he knew that she had escaped Germany at the

end of 1936.  He also personally knew Theodor Werner, before the "trustee" sale of the Painting by Kurt Mosbacher to Theodor Werner in or about April 1938.

10. Theodor Werner never disclosed Justin Thannhauser's role in transporting the Painting to New York and selling it (purportedly) to Vincent Astor in 1948.  After World War II, Hedwig Stern pursued official claims in Germany to recover the Painting or to obtain reparations for its taking – starting in 1948, and continuing through 1955 – but with no success.  Among other things, she also met with Lane Faison of the U.S. Army Monuments, Fine Arts and Archives Division in Munich in early April 1951.  Lane Faison was the Director of the Munich Central Collecting Point for the recovery of Nazi-looted art.  Hedwig Stern also told Lane Faison (in writing) that the Painting had been looted.

11. The Met bought the Painting in or about January 1956 from Vincent Astor.  For reasons explained in the Preliminary Research Report (attached hereto as Exhibit A), the Stern Heirs are informed and believe that The Met's then-Chief Curator Theodore Rousseau knew or consciously disregarded that the Painting had been looted from Hedwig Stern by the Nazis, Fascists and their collaborators, and as an immediate consequence.  He knew this, or consciously disregarded it, when Theodore Rousseau approved The Met selling the painting in a secret transaction that occurred in or about May 1972 – which he did, for two closely-related purposes: (a) the purpose of not restituting the Painting to Hedwig Stern in California, and (b) the purpose also of concealing that Theodore Rousseau had known or consciously disregarded for years that the Painting was Nazi-looted art, starting back when he had approved The Met's acquisition of the Painting in or about January 1956, and thereafter.  The Met's other purported explanations for the secret sale in May 1972 – explanations that it offered only after the sale became publicly known through investigative journalism of *The New York Times* – were false and pretextual (and in some instances, contradictory).

12. Theodore Rousseau was a wartime colleague of Lane Faison, and they remained friends until Rousseau's death in 1973. In fact, Theodore Rousseau was one of the world's foremost experts on Nazi art looting. He and other members of The Met's staff, including museum director James Rorimer, had been high-ranking "Monuments Officers" in the U.S. Army with Lane Faison. Himself, Theodore Rousseau had also served in the Office of Strategic Services (the "OSS," which later became the Central Intelligence Agency), where he had authored (among others) a report for the Art Looting Intelligence Unit of the OSS entitled *Consolidated Interrogation Report No. 2: The Goering Collection. US Office of Strategic Services Art Looting Intelligence Unit (ALIU) Reports 1945-1946.* Washington, DC: OSS ALIU, (15 September 1945).

13. In short, Chief Curator Rousseau and his colleagues at The Met had the best possible knowledge and the skills to conduct provenance research on the Painting. And in 1956, when The Met acquired the Painting, no new catalogue raisonnée or other provenance had been published about the Painting since before the start of World War II. After the start of World War II, the first new catalogue raisonnée was not published until 1967. Notably, The Met itself was the publisher of this new catalogue in 1967 – which means (at least) that Theodore Rousseau certainly was aware of it. Yet, this new catalogue's description of the Painting's provenance entirely omitted Hedwig Stern's prior claims for reparation and restitution. But it did prominently disclose the "red flag" fact that the Painting had been in Germany from 1912 to 1948. To a Monuments Man such as Theodore Rousseau, this fact would certainly have made him aware the Painting was probably looted by the Nazis during their Reich. This is so, because the Painting was one of the highly prominent Post-Impressionist works that the Nazis had notoriously condemned as "degenerate." And all that was true, even assuming that Lane Faison never mentioned Hedwig Stern's claims regarding the Painting to his life-long friend and war-time colleague, Theodore Rousseau. But (on information

and belief), Lane Faison did mention those claims to Theodore Rousseau; alternatively (on information and belief) Theodore Rousseau knew of those claims, even if Lane Faison never mentioned them.

14. The existence or likelihood of those claims by Hedwig Stern eventually became Theodore Rousseau's true motivation for The Met to secretly sell the Painting, in or about May 1972. He died of cancer on or about December 31, 1973. The Met currently maintains records in its archives that concern his tenure there, which spanned the entire time from before the Met obtained the Painting (in or about January 1956) until after it purported to sell the Painting (in or about May 1972). However, The Met has prevented public access to some of these records until 2073, or in other words, until 100 years after his death. The Stern Heirs first learned of the 100-year restriction of the Theodore Rousseau records in 2022. The precise nature of the restricted records remains unknown to them.

15. The Stern Heirs do not know when or by what transaction(s) in or after May 1972 the B&E Foundation claims to have become entitled to hold and display the Painting, nor even whether the B&E Foundation claims (or would claim) to be the owner of the Painting. However, according to the current website of the B&E Foundation (*https://goulandris.gr/en/artwork/vincent-van-gogh-olive-picking*), it seems the B&E Foundation allowed the Painting to be shown at the Van Gogh Museum in Amsterdam, Holland for an exhibition there entitled *Van Gogh and the Olive Groves*, from March 11, 2022 to June 12, 2022. At some time after June 12, 2022, the B&E Foundation again took the Painting into its possession, and since that time, the B&E Foundation has again displayed the Painting in its Athens museum.

16. This photograph of the Painting was shot on or about December 10, 2022 in the museum of the B&E Foundation in Athens:



17. The conduct of the Defendants, as alleged herein, was wanton, fraudulent and malicious, and done consciously in disregard of the rights of Hedwig Stern and her heirs, thereby warranting the imposition of exemplary or punitive damages.

## FIRST CLAIM FOR RELIEF
## (Recovery of Personal Property, against the B&E Foundation and DOES 1-100, inclusive)

18. Plaintiffs incorporate herein by reference the averments of the preceding paragraphs as though fully set forth herein.

19.     The looting of the Painting by the Nazis, Fascists and their collaborators, which began in December 1936 and concluded in January 1939, and all the subsequent transfers of the Painting that happened as an immediate consequence, were ineffective to deprive Hedwig Stern of her ownership of the Painting.  Therefore, the Painting now belongs to the Plaintiffs, who are the surviving heirs of Hedwig Stern.  Consequently, the Painting also does not belong to the B&E Foundation.

20.     Representatives of the Stern Heirs have communicated with representatives of the B&E Foundation, in attempting to recover the Painting.  But, the Painting remains on display at the museum of the B&E Foundation in Athens.  Unless compelled by order of this Court, the B&E Foundation will not deliver the Painting into the possession of the Plaintiffs.

## SECOND CLAIM FOR RELIEF
## (Restitution of Unjust Enrichment, against The Met and DOES 1-100, inclusive)

21.     Plaintiffs incorporate herein by reference the averments of the preceding paragraphs as though fully set forth herein.

22.     The Met enriched itself unjustly by knowingly purporting to sell the Painting secretly in or about May 1972 – rather than making the Painting available for any other museum to acquire and publicly display, and rather than delivering it to Hedwig Stern herself – for the purpose of preventing restitution of the Painting to Hedwig Stern in California, and thereby concealing the fact that The Met had known or consciously disregarded since 1956 that the Painting had been looted by Nazis and their collaborators.

23.     As the surviving heirs of Hedwig Stern, the Plaintiffs are entitled to restitution from The Met, in an amount equal to the proceeds derived by The Met

in 1972. A copy of the bill of sale showing the amount of those proceeds was shown to *The New York Times*, but the amount of the sale had been blacked-out.

### THIRD CLAIM FOR RELIEF
### (Conversion, against All Defendants)

24. Plaintiffs incorporate herein by reference the averments of the preceding paragraphs as though fully set forth herein. As the surviving heirs of Hedwig Stern, the Plaintiffs are entitled to damages, in an amount equal to actual value of the Painting.

25. The Met converted the Painting when The Met purported to sell the Painting in or about May 1972.

26. The B&E Foundation converted the Painting when it received possession of the Painting (back from the Van Gogh Museum) sometime after June 12, 2022, and subsequently displayed the Painting at the museum of the B&E Foundation.

### PRAYER FOR RELIEF

Plaintiffs respectfully pray for judgment in its favor and against Defendants, as follows:

1. On the First Claim for Relief, for preliminary and/or permanent injunctive relief commanding the Basil & Elise Goulandris Foundation and DOES 1-100 (inclusive), as well as their officers, employees, agents and all others acting for or in concert with them, to deliver the Painting into the Plaintiffs' sole possession, and prohibiting the Basil & Elise Goulandris Foundation and DOES 1-100 inclusive from delivering or allowing the Painting to enter into the possession of any other persons or parties.

2. On the Second Claim for Relief, for restitution to Plaintiffs by The Metropolitan Museum of Art and by DOES 1-100 inclusive, of the amount of

money that they received or derived (directly or indirectly) from The Met purporting to sell the Painting in or about May 1972.

    3.    On the Third Claim for Relief, for damages against all Defendants, in an amount to be proven but not less than the fair market value of the Painting.

    4.    For punitive or exemplary damages against all Defendants, inclusive.

    5.    For all other relief allowed by law or in equity, including interest.

    6.    For costs as provided by law.

Respectfully submitted,

Dated: December 15, 2022    **KOHN LAW GROUP, INC.**

By: /s/ Robert E. Kohn
       Robert E. Kohn

Counsel for Plaintiffs JUDITH SILVER; DEBORAH SILVER; KOFI M. LEE; SEKAI K. LEE; MARY LEE; WALTER E. HENRICKSON; DANIEL HENRICKSON; DORIT MARCKS; and ILAN MARCKS

## DEMAND FOR TRIAL BY JURY

Plaintiffs respectfully demand trial by jury in this action of all issues so triable. *See* Fed. R. Civ. P. 38(c).

Respectfully submitted,

Dated: December 15, 2022    **KOHN LAW GROUP, INC.**

By: /s/ Robert E. Kohn
       Robert E. Kohn

Counsel for Plaintiffs JUDITH SILVER; DEBORAH SILVER; KOFI M. LEE; SEKAI K. LEE; MARY LEE; WALTER E. HENRICKSON; DANIEL HENRICKSON; DORIT MARCKS; and ILAN MARCKS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28